1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10TH GEAR LLC, *et al.*,

                Plaintiffs,

      v.

PACCAR, INC.,

                Defendant.

CASE NO. 2:23-cv-01933-RSL

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS

       This matter comes before the Court on "Defendant's Motion to Dismiss." Dkt. # 36.
Plaintiffs are purchasers and/or lessees of various vehicles equipped with EPA 2021 MX-
13 diesel engines manufactured by defendant. They filed this lawsuit on December 15,
2023, asserting nationwide class claims under the Washington Consumer Protection Act
and common law theories of breach of express warranty and breach of implied warranty.
Plaintiffs also assert a cause of action for fraudulent omission on behalf of various
statewide subclasses. Defendant seeks dismissal of all of plaintiffs' claims under Fed. R.
Civ. P. 12(b)(6).

Having reviewed the First Amended Complaint and the memoranda and exhibits submitted by the parties,[1] the Court finds as follows:

## BACKGROUND

Plaintiffs allege that the fuel system in their EPA 2021 MX-13 engines is defective because the fuel injectors become obstructed internally at a much higher frequency and after far less uses than fuel injectors in comparable engines or in prior versions of the MX-13 engine. Plaintiffs allege that Paccar knew or should have known of the defect by late 2021 or early 2022, that Paccar knows what causes the malfunction, and that Paccar has not disclosed the information to its customers, the trucking industry, or the public.

Plaintiffs allege that the fuel injector malfunctions alleged in the complaint have been repaired by Paccar under the terms of its Basic Engine Warranty. The repairs, however, were only temporary and did not address the root cause of the problem. In March 2022, Paccar issued Service Bulletin E290 which recommended a fuel injector cleaning process to clean carboxylate deposits that might be clogging the injector internal ports. The procedure would not be "a permanent fix. If the problem returns, switching fuel sources may reduce the formation of deposits." Dkt. # 36-1 at 3. Paccar also recommended use of an in-tank fuel additive at the discretion of the customer. In March 2023, Paccar issued Service Bulletin E300, offering to reimburse customers for up to $830 in fuel additives

---

[1] The Service Bulletins submitted by defendant, Dkt. # 36-1 and # 36-2, are incorporated by reference into the First Amended Complaint. They have been considered as evidence of defendant's representations and statements, not for the truth of the matters asserted therein.

This matter can be decided on the papers submitted. Defendant's request for oral argument is DENIED.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 2

(including sales tax). Plaintiffs allege that Paccar's public stance that the problem was the result of customers' fuel choices was merely a deflection. Plaintiffs allege that customers with mixed fleets were driving the same routes, using the same drivers, and fueling at the same locations but were having problems only with their EPA 2021 MX-13 engines. Plaintiffs further allege that Paccar was getting warranty claims only with regards to that engine.

Paccar's Basic Engine Warranty, under which plaintiffs' vehicles were repaired, promises that the EPA 2021 MX-13 engine will be free from defects in material and workmanship for the first 24 months, 250,000 miles, or 6,250 hours in which the engine is in use, whichever comes first. The warranty is described as "limited" and the "SOLE AND EXCLUSIVE REMEDY" for warrantable failures. Dkt. # 13-1 at 2. Paccar made "no other warranties, express or implied" and "EXPRESSLY DISCLAIMED ANY WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE." *Id*.

## DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6) Standard

The question for the Court on a motion to dismiss under Rule 12(b)(6) is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th

Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

1    **B. Implied Warranty Claim (Count III)**

2        Under the laws of each of the potentially relevant states, a seller is permitted to

3   disclaim implied warranties as long as it does so in a clear and conspicuous manner. *See,*

4   *e.g.*, RCW 62A.2-316(2) (subject to exceptions not applicable here, "to exclude or modify

5   the implied warranty of merchantability or any part of it the language must mention

6   merchantability and in case of a writing must be conspicuous, and to exclude or modify

7   any implied warranty of fitness the exclusion must be by a writing and conspicuous.

8   Language to exclude all implied warranties of fitness is sufficient if it states, for example,

9   that 'There are no warranties which extend beyond the description on the face hereof.'" ).

10  The object is to ensure that the seller's intention to disclaim warranties is clear, and the use

11  of "expressions like 'as is,' 'with all faults,' or other language which in common

12  understanding calls the buyer's attention to the exclusion of warranties and makes plain

13  that there is no implied warranty" are effective. RCW 62A.2-316(3)(a). Plaintiffs do not

14  dispute that the written warranty at issue here clearly and conspicuously disclaims both the

15  warranty of merchantability and the warranty of fitness.

16      Instead, plaintiffs assert that the exclusion of implied warranties is unconscionable.

17  RCW 62A.2-302. They do not, however, discuss any of the potentially-relevant state law

18  regarding unconscionability. In Washington, whether an exclusionary clause is

19  unconscionable is determined by the Court as a matter of law. *Am. Nursery Prods., Inc. v.*

20  *Indian Wells Orchards*, 115 Wn.2d 217, 222 (1990). When the dispute arises in the context

21  of a commercial transaction for the sale of goods, as is the case here, a totality of the

circumstances analysis is used to determine conscionability unless there is evidence of unfair surprise. *Puget Sound Fin., LLC v Unisearch, Inc.*, 146 Wn.2d 428, 439-40 (2002). There being no indicia of surprise, the Court evaluates non-exclusive factors in assessing the unconscionability of a warranty disclaimer, including: (1) the conspicuousness of the clause in the agreement; (2) the presence or absence of negotiations regarding the clause; (3) the custom and usage of the trade; (4) any policy developed between the parties during the courts of dealing; (5) the manner in which the parties entered into the contract; (6) whether the parties had a reasonable opportunity to understand the terms of the contract; and (7) whether the important terms were hidden in a maze of fine print. *Puget Sound Fin.*, 146 Wn.2d at 441-42 (citing *Schroeder v. Fageol Motors, Inc*., 86 Wn.2d 256, 259-61 (1975), and *Am. Nursery Prods*., 115 Wn.2d at 222).

Plaintiffs have not alleged facts giving rise to a plausible inference that the Basic Engine Warranty was procedurally or substantively unconscionable. Plaintiffs affirmatively allege that they relied on the existence of the Basic Engine Warranty in purchasing their vehicles and that they received a copy of the warranty at or about the time the trucks were delivered. The implied warranty disclaimers are part of a two-page document, they are set forth in the first few paragraphs in capital letters, and the exclusiveness of and limitations on the warranties provided is repeated multiple times. Dkt. # 13-1. Plaintiffs, who were parties to the purchases, provide no facts regarding the negotiations or transactions that would suggest that they were compelled by some exigency to purchase vehicles with EPA 2021 MX-13 engines from Paccar, that they did not have a

reasonable opportunity to understand the terms of warranty, or that the disclaimer was somehow hidden from them. Plaintiffs' claim of procedural unconscionability is based on the adhesive nature of the Basic Engine Warranty, but the terms of the warranty were clearly stated and plaintiffs nevertheless chose to purchase a Paccar vehicle despite having other options for suppliers and engines.

Plaintiffs' claim of substantive unconscionability turns on Paccar's alleged prior knowledge and concealment of the irreparable defect at issue and the resulting inequality in the parties' bargaining power and ability to protect themselves. "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. 'Shocking to the conscience,' 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995) (internal quotations and citations omitted). None of those descriptions apply here. As mentioned above, the UCC, as adopted by the various states, expressly allows a seller to limit or exclude warranties as long as the intention to do so is clearly conveyed to the purchaser. Language which makes plain that there is no implied warranty is effective and is *prima facie* conscionable in commercial transactions absent evidence of unfair surprise. RCW 62A.2-316(3)(a); *Puget Sound Fin.*, 146 Wn.2d at 439; *Schroeder*, 86 Wn.2d at 262. Indeed, courts regularly find that limitations on implied warranties are neither overly harsh nor callously one-sided. *See M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819, 835–37 (1999) (finding on summary judgment that limitations on consequential

damages are standard in the industry, do not shock the conscience, and are useful in making products affordable).

Plaintiffs argue that because they have asserted a claim of unconscionability, the Court cannot dismiss the implied warranty claim until they have a reasonable opportunity to provide evidence in support of the claim. RCW 62A.2-302(2) ("When it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."). Plaintiffs' task at this juncture is to allege facts that raise a plausible inference of liability under an implied warranty theory. They have not done so, and the mere invocation of the term "unconscionable" does not alter the pleading standards of Rule 8 or the standard of review under Rule 12(b)(6). Where the breach of implied warranty claim is not supported by sufficient factual allegations, it cannot survive a motion to dismiss.

**C. Washington Consumer Protection Act ("CPA") Claim (Count I)**

Plaintiffs allege that Paccar's sale of vehicles "knowing but choosing not to disclose the material fact[s] that these trucks" were defective and could not be permanently fixed is an unfair and deceptive act or practice committed in the conduce of trade or commerce under the CPA. Dkt. # 13 at ¶¶ 211-12. Defendant argues that the CPA does not apply under Washington's choice-of-law analysis, that the claim is not pled with the particularity required by Rule 9(b), that plaintiffs have failed to allege an unfair or deceptive act and/or

that Paccar's conduct impacts the public interest, and that the CPA claim is barred by the statute's safe harbor provision.

### 1. Choice of Law Analysis

Plaintiffs assert that Washington's consumer protection law applies to this case despite the fact that all of the named plaintiffs are residents of, received defendant's representations, purchased their vehicles, sought warranty repairs, and suffered injury in states other than Washington. Paccar argues that the law of each customer's home state has the more significant relationship to the dispute. As a preliminary matter, the parties apparently agree that there is "an actual conflict between the consumer protection laws or policy interests of Washington and the laws or interests of another state." *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997). To make a choice between the conflicting laws, Washington uses the most significant relationship test as articulated in Restatement (Second) of Conflict of Laws § 145 (general tort claims) and § 148 (fraud and misrepresentation claims). *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580-81 (1976); *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc*., 175 Wn. App. 840, 859 (2013) (noting that while section 148 has not been formally adopted, Washington courts refer to that provision as a refinement of the section 145 criteria to guide the choice of law analysis for claims of misrepresentation or fraud).

The most significant relationship inquiry involves a two-step analysis. *Southwell v. Widing Transp., Inc*., 101 Wn.2d 200, 204 (1984). The Court first evaluates the contacts with each interested jurisdiction, considering which contacts are most significant to the

occurrence and the parties and determining where those contacts are found. *Johnson*, 87 Wn.2d at 581. Second, the Court evaluates the interests and public policies of the competing jurisdictions. *Southwell*, 101 Wn.2d at 204. "The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved." *Id*. (citing *Johnson*, 87 Wn.2d at 582).

### a. Evaluation of Contacts

Sections 145 and 148 of the Restatement (Second) of Conflict of Laws identify certain contacts to be taken into account in the first step of the analysis:

> (i) the place where the injury occurred or where plaintiffs acted in reliance upon defendant's representations,

> (ii) the place where the conduct causing the injury or the representations occurred,

> (iii) the place where the plaintiff received the representations,

> (iv) the place where the defendant made the representations,

> (v) the domicile, residence, nationality, place of incorporation and place of business of the parties,

> (vi) the place where the relationship, if any, between the parties is centered,

> (vii) the place where a tangible thing which is the subject of the transaction between the parties was situated, and

> (viii) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Any injury plaintiffs suffered as a result of Paccar's conduct occurred in the states where they reside, namely Kansas, Missouri, Florida, Wisconsin, Minnesota, Alabama, and Illinois. Plaintiffs were not warned of the alleged defect and (presumably) heard Paccar's advertising/misrepresentations in their home states, most of them purchased their vehicles, received the Basic Engine Warranty, sought repairs, and made warranty claims in their home states, and the trucks and warranties that are part of the transaction are located in plaintiffs' various home states. On the other hand, Paccar is a Washington corporation, and the alleged failure to disclose an unfixable defect, the drafting and issuance of the Basic Engine Warranty, and decisions regarding warranty coverage presumably occurred there. Determining where defendant's relationship with each plaintiff class member is centered is complicated by the fact that all of the purchases, repairs, and warranty claims were made through third parties: plaintiffs acted entirely within their home states (or another non-Washington state) and defendant, for its part, acted entirely in Washington. Overall, the Court finds that the balance of relevant contacts giving rise to plaintiffs' claims tips slightly toward the states in which plaintiffs reside.

### b. Policy Interests

The second step of Washington's choice-of-law analysis requires an evaluation of the interests and public policies of the competing jurisdictions. The Court considers, among other things, the purposes of relevant local law and each jurisdiction's policy goals on particular issues when determining which state has the greater interest in determining

the dispute. *See Zenaida-Garcia v. Recovery Sys. Tech., Inc*., 128 Wn. App. 256, 263-64 (2005).

Washington clearly has an interest in making sure that its businesses conduct themselves in a fair and honest way, regardless whether their commercial activities are directed at Washington residents or out-of-state residents. *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 800 (2015). The CPA has fair and honest competition as one of its primary purposes, and unfair or deceptive practices directed at out-of-state consumers could place honest businesses at a competitive disadvantage compared to those who are generating revenue from conduct that is prohibited by the statute. *Id.* Kansas, Missouri, Florida, Wisconsin, Minnesota, Alabama, and Illinois have their own interests in regulating trade practices that can injure their residents and impact their economy. *Thornell v. Seattle Serv. Bureau, Inc.*, No. C14-1601-MJP, 2016 WL 3227954, at *3 (W.D. Wash. June 13, 2016). In fact, they have all enacted their own consumer protection statutes which provide varying levels of protection and reflect the states' views of what is and is not unlawful conduct in trade or commerce. As the Ninth Circuit has recognized, "each state has a strong interest in determining the optimum level of consumer protection balanced against a more favorable business environment, and to calibrate its consumer protection laws to reflect their chosen balance." *Id.* at *4 (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 592 (9th Cir. 2012)).

The Court concludes that the states in which plaintiffs reside have the most significant relationship to the misrepresentations/omissions that form the basis of

plaintiffs' CPA claim and the greater interest in the outcome of this dispute. The CPA does not, therefore, apply.

### 2. Adequacy of Allegations Under Rule 9(b)

The parties agree that plaintiffs' CPA claim is subject to the heightened pleading requirements of Rule 9(b). For the reasons discussed below in Section E, plaintiffs have failed to adequately plead fraud.

### 3. Other Arguments

Because the CPA does not apply and/or the claim was not pled with the particularity required by Rule 9(b), the Court need not determine whether plaintiffs have failed to allege elements of a CPA claim or whether the claim is barred by the statute's safe harbor provision.

## D. Breach of Express Warranty Claim (Count II)

Paccar has consistently and repeatedly attempted to repair the fuel injector problems plaintiffs have experienced under its Basic Engine Warranty, which promises that the EPA 2021 MX-13 engine will be free from defects in material and workmanship for a specified period. These attempts have, however, been unsuccessful: plaintiffs allege that the fuel injectors continue to clog and cause the engine to stall or lose power when in use. They assert a breach of express warranty claim because Paccar has failed to repair or replace a warrantable defect as promised. Paccar argues that it did not breach the warranty because it covered all of the alleged repairs, which were successful for all but two of the named

plaintiffs, 10th Gear and MGM Transport. Paccar also argues that the defect alleged in this case is one of design and does not fall within the scope of the Basic Engine Warranty.

The UCC – and most state versions of the UCC – allows express warranties that limit the damages recoverable to the return and repayment of the price of goods or to the repair or replacement of nonconforming goods. But such limitations will not be enforced when the warranty has failed its essential purpose. A limited warranty generally fails of its essential purpose when the warrantor, having been given notice and an opportunity to correct the defects, does not do so within a reasonable time. Paccar's assertion that it successfully repaired plaintiffs' vehicles and therefore fulfilled its warranty obligations is surprising given the allegations of the First Amended Complaint. Each and every plaintiff alleges that one or more of its vehicles with an EPA 2021 MX-13 engine had fuel injector problems, that defendant's authorized service centers repaired the defect (or was unable to do so because of a parts shortage), and that at least one of the "repaired" vehicles had the same issues thereafter. Plaintiffs variously allege eight fuel injection failures in the same vehicle (10th Gear), "repeated failed attempts to permanently fix the injector problems" (G4 Innovations), nineteen attempts to repair five trucks, including one which suffered a catastrophic engine failure (Little Diesel Transportation), a repair attempt that "was ineffective and did not prevent the problems from recurring" (Zeke and Lizzie, Vision AG, L Z S Ceremonial Trails, Mattson's Lawn & Garden, TRPVS), an inability to obtain new fuel injectors when needed (L Z S Ceremonial Trails), fourteen attempts at repair that failed within a week (MGM Transport), and repeat trips to the authorized service center

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

with at least 9 separate vehicles (CRC Transport). Defendant cannot succeed on a motion to dismiss by ignoring or contradicting these allegations.

With regards to the scope of the warranty issue, it is clear that the Basic Engine Warranty does not cover design defects. The allegations of the First Amended Complaint do not clearly identify the nature of the defect, noting that fuel is unable to flow freely through the injectors and hypothesizing about both design and manufacturing errors that could be causing the problem. Outside of litigation, Paccar has repeatedly agreed that the fuel injector problems are covered by the Basic Engine Warranty. Taking the allegations in the light most favorable to plaintiffs, recognizing that Paccar's course of performance may shed light on the interpretation and application of the warranty where the cause of a problem is unknown, and noting that Paccar made no response to plaintiffs' estoppel argument, the Court finds that plaintiffs' breach of express warranty claim is colorable and may proceed.

**E. Fraudulent Omission Claim (Count IV)[2]**

Plaintiffs allege that Paccar was aware of the fuel system defect in the EPA 2021 MX-13 engine as early as October 28, 2021, but continued selling vehicles that were unfit for their intended purpose and chose not to disclose the defect. The fraudulent omission

---

[2] The First Amended Complaint incorrectly identifies the fourth claim as "Count VI."

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 15

claim is brought on behalf of seven putative statewide classes in Kansas, Missouri, Wisconsin, Alabama, Minnesota, Florida, and Illinois.[3]

The parties agree that under Wisconsin law, the economic loss rule precludes a tort claim in the products liability context where the only loss alleged is economic, as is the case here. *See* Dkt. # 37 at 31. Thus, the Wisconsin subclass' fraudulent omission claim is dismissed. The Court declines to determine whether the courts of Kansas, Missouri, Alabama, Minnesota, Florida, and/or Illinois would apply the economic loss doctrine to the commercial product liability claims asserted here. The parties devote little more than a paragraph to this question, offering string cites instead of analysis. *But cf. David v. Hett*, 293 Kan. 679, 270 P.3d 1102 (2011) (dedicating ten pages of the Pacific Reporter to a survey of case law regarding the development of the economic loss doctrine in Kansas and around the country, recent changes to the doctrine, and its application to the facts presented). The parties fail to substantively engage with the economic loss doctrine, making no effort to explain how each state describes and applies the doctrine or whether it would apply to the facts alleged here.

Defendant also challenges the adequacy of the factual allegations offered in support of the fraudulent omission claim, pointing out that Rule 9(b) requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged

---

[3] The complaint alleges ten statewide subclasses, but plaintiffs concede that they cannot maintain subclasses for Oregon, Maryland, or Texas. Dkt. # 37 at 23, n.3.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 16

generally." The rule "serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations omitted, brackets in original). To accomplish these goals, Rule 9(b) requires that "[a]verments of fraud ... be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1265 (C.D. Cal. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Whether defendant had knowledge of the alleged fuel injector defect prior to any given sale of a vehicle with an EPA 2021 MX-13 engine is an essential element of plaintiffs' fraudulent omission claim in that it goes to both knowledge and a duty to disclose. According to the First Amended Complaint, knowledge of the defect and the duty to disclose arose from the facts that: (a) trucks equipped with the EPA 2021 MX-13 began experiencing fuel injector failures as soon as the engine was introduced; (b) by late 2021 or early 2022, defendant was aware of the failures because the authorized service centers that diagnosed and repaired the engines would report the problem to Paccar and/or make warranty claims seeking reimbursement; (c) on or about October 28, 2021, Paccar

identified a "potential trend in its early fleet assessment data" which caused it "to launch an investigation into the cause and extent of the issue," Dkt. # 13 at ¶ 65; (d) defendant issued a service bulletin to its authorized service centers regarding the fuel injector problems on March 31, 2022; and (e) at some point, Paccar began rationing replacement fuel injectors because the demand was so high. The very earliest date by which defendant allegedly knew of the fuel injector defect is October 28, 2021. Two of the named plaintiffs, G4 Innovations LLC and TRPVS, Inc., took possession of the subject trucks before that date and have therefore failed to adequately allege knowledge or duty. Because TRPVS is the only plaintiff from Illinois, the fraudulent omission claim asserted on behalf of the Illinois subclass cannot proceed.

More globally, the facts alleged do not give rise to a plausible inference that the failure to disclose the fuel injector defect was fraudulent as opposed to merely negligent. According to plaintiffs, Paccar spotted a trend in its fleet assessment and service center data as early as October 2021, it initiated an investigation at some unidentified time thereafter, and by March 2022 it was telling authorized service centers that carboxylate deposits might be clogging the fuel injectors and recommending a cleaning procedure. During the following year, Paccar recommended the use of in-tank cleaners to address the engine's perceived "sensitivity to variations in diesel fuel quality," ultimately agreeing to reimburse customers for the cost of the additives. Dkt. # 36-2 at 2. While plaintiffs repeatedly aver that these hypotheses and recommendations were insincere and that Paccar actually knew the EPA 2021 MX-13 engine had an irreparable defect that made it unfit for

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 18

its intended purpose, there are no facts suggesting that the internal investigation revealed a design, manufacturing, or mechanical defect. Plaintiffs provide no specifics regarding the nature of the investigation, when it occurred, who conducted it, what was found, or any of the details that could justify an allegation that Paccar was lying as of any particular date. Nor are there any documents or witness statements suggesting that Paccar did not believe that fuel quality and resulting deposits were the most likely cause of the reported problems during the relevant period. Finally, the assertion that Paccar issued service bulletins to its authorized service dealers as a means of misdirecting the public is wholly unsupported. Plaintiffs' allegations of fraud, while sufficient to provide defendant with adequate notice to allow it to defend the charge, risk the company's reputation without a factual basis and depend entirely on the hope that discovery will flesh out the claim of prior knowledge. It is therefore insufficient under Rule 9(b) and may not proceed.

**F. Standing**

Defendant challenges plaintiffs' standing to pursue claims related to vehicle models that contain the EPA 2021 MX-13 engine but were not purchased by any of the named plaintiffs. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In order to establish a federal court's jurisdiction over a case or controversy, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct ..., and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61); *Perry v. Newsom*,

18 F.4th 622, 630 (9th Cir. 2021), *cert. denied sub nom*. *Hollingsworth v. Perry*, 143 S. Ct. 301 (2022)). The Supreme Court has emphasized that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2207-2208 (2021); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–352 (2006).

Plaintiffs' claims are based on allegations regarding a common defect in the EPA 2021 MX-13 engine that was installed by Paccar in various truck/tractor models over a number of years. Defendant does not point to any distinction or difference in the engines or otherwise attempt to show that engines installed in plaintiffs' models were not functionally equivalent to all the others. The Court finds that plaintiffs have standing to pursue claims involving a common defect across the various models and years at issue.

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. # 36) is GRANTED in part and DENIED in part. Plaintiffs have adequately pled their breach of express warranty claim. The CPA, implied warranty, and fraudulent omission claims are hereby DISMISSED. Although most of plaintiffs' claims have been dismissed, this

litigation continues. In this context, leave to amend will not be blindly granted. If plaintiffs believe they can, consistent with their Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, they may file a motion to amend and attach a proposed pleading for the Court's consideration under LCR 15.

Dated this 3rd day of February, 2025.

_MnM S Lasnik_
Robert S. Lasnik
United States District Judge