The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

10TH GEAR LLC, G4 INNOVATIONS LLC, LITTLE DIESEL TRANSPORTATION, ZEKE AND LIZZIE, LLC, VISION AG, LLC, L Z S CEREMONIAL TRAILS, INC., MATTSON'S LAWN & GARDEN, INC., CRC TRANSPORT, LLC, TRPVS, INC., MULTI LOGISTIC LLC, SAN BENITO EQUIPMENT, LLC, BRENT REDMOND TRANSPORTATION INC., CPC CONSTRUCTORS INC., VOGES AND SCHERZER TRUCKING LLC, WOLVERINE HAULERS LLC, BK TRUCKING COMPANY INC., HILLFORD C TRUCKING INC., AMS TRUCKING LLC, NTA LTD., 3 RUSTY NAILS, INC., KIMRAD TRANSPORT LP, VINTNER'S LOGISTICS LLC, AVALA EXPRESS LLC, JOSHUA BUTLER, KJM ENTERPRISES INC., LD ENTERPRISE LLC, VANCORE, INC., WEBB PALLET SERVICE CORP., SPRUCE TRUCKING LLC, M R ON TIME CONSTRUCTION, INC., JOHN H. KOOY TRUCKING, INC., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

PACCAR, INC., a Delaware Corporation,

Defendant.

Case No. 2:23-cv-01933-RSL

**PACCAR INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**Note on Motion Calendar:**
**April 7, 2026**

**ORAL ARGUMENT REQUESTED**



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. REGULATORY BACKGROUND ..... 2

A. THE CLEAN AIR ACT SUBJECTS HEAVY-DUTY ENGINES TO EXTENSIVE CERTIFICATION REQUIREMENTS TO ENSURE COMPLIANCE BEFORE ENTERING INTO COMMERCE. ..... 3

B. THE CLEAN AIR ACT REQUIRES MANDATORY WARRANTY COVERAGE FOR FUEL INJECTORS. ..... 5

C. THE CLEAN AIR ACT VESTS EPA AND CARB WITH EXCLUSIVE AUTHORITY TO ENFORCE COMPLIANCE WITH EMISSIONS STANDARDS. ..... 6

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 9

A. THE CLEAN AIR ACT PREEMPTS PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM ..... 9

1. The Clean Air Act expressly preempts Plaintiffs' breach of warranty claim. ..... 10

2. The Clean Air Act impliedly preempts Plaintiffs' breach of warranty claim. ..... 16

a. The CAA "occupies the field" of emission standards enforcement, thus preempting Plaintiffs' claim. ..... 16

b. Plaintiffs' breach of warranty claim is preempted because the requested relief conflicts with EPA's and CARB's chosen remedy. ..... 18

V. CONCLUSION ..... 20




CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

***Cases***

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) .......... 9

*Coventry Health Care of Mo., Inc. v. Nevils*,
581 U.S. 87 (2017) .......... 10

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) .......... 10, 13

*Fajardo v. Cnty. of Los Angeles*,
179 F.3d 698 (9th Cir. 1999) .......... 9

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) .......... 16

*Gregg v. Hawaii, Dep't of Pub. Safety*,
870 F.3d 883 (9th Cir. 2017) .......... 9

*In re Caterpillar Inc. C13 & C15 Engine Prods. Liab. Litig.*,
No. 1:14-cv-3722-JBS-JS, 2015 WL 4591236
(D.N.J. July 29, 2015) .......... 10, 12, 13, 14, 15, 17, 18

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .......... 9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .......... 10, 13, 14, 15

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*,
65 F.4th 851 (6th Cir. 2023) .......... 2, 5, 16

*In re Volkswagen "Clean Diesel" Mrtg., Sales Pracs., and Prod. Liab. Litig.*,
No. 3:15-md-02672-CRB (N.D. Cal. Dec. 20, 2016) .......... 8

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 9

*Maryland v. Louisiana*,
451 U.S. 725 (1981) .......... 9



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 10

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*,
813 F.3d 718 (9th Cir. 2016) .......... 10

*Stamas v. Cnty. of Madera*,
No. 09-cv-0753-LJO-SMS, 2010 WL 289310 (E.D. Cal. Jan. 15, 2010) .......... 2

*United States v. Caterpillar*,
No. 1:11-cv-1373 (D.D.C. Sept. 7, 2011) .......... 8

***Constitutional Provisions***

U.S. Const. art. VI, cl. 2 .......... 9

***Federal Statutes***

42 U.S.C. § 7521 .......... 2

42 U.S.C. § 7521(a)(1) .......... 2, 3

42 U.S.C. § 7522(a)(1) .......... 3

42 U.S.C. § 7522(a)(4)(D) .......... 10

42 U.S.C. § 7523 .......... 10

42 U.S.C. § 7524 .......... 10

42 U.S.C. § 7525(a)(1) .......... 4

42 U.S.C. § 7541(a) .......... 5

42 U.S.C. § 7541(a)(1) .......... 11

42 U.S.C. § 7541(a)(1)(A) .......... 5

42 U.S.C. § 7543(a) .......... 1, 3, 10, 13, 14, 15

42 U.S.C. § 7543(b) .......... 1



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

***State Statutes***

Cal. Health & Safety Code § 43151(a) .......... 3

***Federal Rules***

Fed. R. Civ. P. 12(c) .......... 2, 9

***Federal Regulations***

40 C.F.R. § 86.001 .......... 3

40 C.F.R. § 86.004 .......... 5, 11, 18

40 C.F.R. § 86.088 .......... 11

40 C.F.R. § 86.1803 .......... 6

40 C.F.R. § 86.1842 .......... 4, 4, 18

40 C.F.R. § 86.1844 .......... 4

40 C.F.R. § 86.1844(4) .......... 4

40 C.F.R. § 1036.1(a) .......... 5

40 C.F.R. § 1036.120 .......... 11

40 C.F.R. § 1036.120(c) .......... 6

40 C.F.R. § 1036.125(a) .......... 11

40 C.F.R. § 1036.205(b) .......... 4

40 C.F.R. pt. 1065 (2024) .......... 4

40 C.F.R. pt. 1068, app. A (2024) .......... 6

40 C.F.R. § 1068.30 .......... 11

40 C.F.R. § 1068.101(a)(1) .......... 3

40 C.F.R. § 1068.115 .......... 5, 18



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

40 C.F.R. § 1068.501(1) ........ 6, 6

40 C.F.R. § 1068.501(7) ........ 7

40 C.F.R. § 1068.501(a) ........ 6, 7

40 C.F.R. § 1068.505(a) ........ 19

***State Regulations***

Cal. Code Regs. tit.13, § 1900 ........ 6

Cal. Code Regs. tit.13, § 1956 ........ 5

Cal. Code Regs. tit.13, § 2036 ........ 5, 6, 11

Cal. Code Regs. tit.13, § 2123 ........ 8

Cal. Code Regs. tit.13, § 2141 ........ 7

Cal. Code Regs. tit.13, § 2143 ........ 8

Cal. Code Regs. tit.13, § 2144 ........ 7

Cal. Code Regs. tit.13, § 2146 ........ 7

Cal. Code Regs. tit.13, § 2148 ........ 8

***Other Authorities and Publications***

H.R. Rep. No. 90-728 (1967) ........ 3

*Emissions-Related Parts List*, California Air Resources Board (June 1, 1990), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/afteroff/plist3.pdf ........ 6




CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION

The Clean Air Act ("CAA") preempts Plaintiffs' breach of express warranty claim. Plaintiffs allege PACCAR breached its Limited Warranty Agreement by installing allegedly defective fuel injectors—an "emissions-related part"—in its EPA-2021 MX-13 diesel engines. Third Am. Compl. ("TAC") ¶ 115 (Dkt. # 108, at p. 24). Because Plaintiffs concede that the fuel injectors are an "emissions-related part," their claim "relat[es] to the control of emissions from new motor vehicles or new motor vehicle engines" and is therefore preempted under CAA Section 209(a), which expressly prohibits any state or private party from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or…engines." 42 U.S.C. § 7543(a).

Plaintiffs seek to stand in EPA's shoes by attempting to enforce emissions standards through their breach of warranty claim. Plaintiffs allege that "PACCAR breached the Limited Warranty Agreement because, prior to June 2024, PACCAR could not make all adjustments, repairs or replacements *necessary to ensure that trucks equipped with the EPA 2021 MX-13 engine complied with applicable EPA emissions standards*…." TAC ¶ 471 (Dkt. # 108, at p. 76) (emphasis added).[1] Plaintiffs also claim that the "Fuel System Defect triggered PACCAR's Emission warranty because it . . . meant the EPA 2021 MX-13 engine *had the potential to produce excess emissions, which would cause it to not conform to EPA regulations*." *Id.* ¶ 116 (emphasis added).

PACCAR has not breached its warranty because it has replaced the fuel injectors as warranted and at no expense to Plaintiffs as the CAA requires. But even if Plaintiffs' allegations were true, this Court should find that Plaintiffs' breach of express warranty claim is preempted because it falls squarely with the CAA's comprehensive, statutorily mandated emissions warranty and enforcement framework and would "inescapably and impermissibly put[] a jury into the EPA's

[1] The California Air Resources Board ("CARB") also has authority to adopt and enforce emission standards. *See* 42 U.S.C. § 7543(b).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

regulatory shoes."[2] *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.,* 65 F.4th 851, 863 (6th Cir. 2023).

Congress granted EPA the authority to develop and enforce emission standards for motor vehicles. 42 U.S.C. § 7521. EPA and CARB have already ordered PACCAR to address the fuel injector issue by extending the CAA mandated warranty period. TAC ¶ 139 (Dkt. # 108, at p. 28). By seeking damages and other indeterminate relief, Plaintiffs aim to usurp the role of EPA and CARB, the agencies to which Congress gave the *exclusive* authority to enforce emissions-related compliance. Plaintiffs ask this Court to supplant the agencies' judgment with their own, which "would permit them to rebalance the EPA's objectives[,]" thereby "disrupt[ing] the expert balancing underlying the federal scheme." *In re Ford*, 65 F.4th at 863. Because the CAA preempts such private party interference and state-law remedies for federal emissions-related compliance, the Court should grant PACCAR's motion to dismiss, or, in the alternative, motion for judgment on the pleadings.[3]

## II. REGULATORY BACKGROUND

Congress chose to vest EPA—not states or private plaintiffs—with comprehensive regulatory authority over new motor vehicle and engine emissions. CAA Section 202(a)(1) requires that EPA "prescribe . . . standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7521(a)(1). CAA Section 209(a) makes clear: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or

[2] PACCAR continues to maintain and does not waive its position that it has not breached the Limited Warranty Agreement. PACCAR has provided the necessary repairs to Plaintiffs when required under the terms of the Limited Warranty Agreement and as required by the CAA.

[3] An "amended pleading is subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement)." *Stamas v. Cnty. of Madera*, No. 09-cv-0753-LJO-SMS, 2010 WL 289310, at *4 (E.D. Cal. Jan. 15, 2010). PACCAR's Motion to Dismiss Plaintiffs' Third Amended Complaint is timely. *See* Order Granting the Parties' Stipulated Motion for Leave (Dkt. # 110) (establishing March 10, 2026 as the deadline for PACCAR's response to Plaintiffs' Third Amended Complaint). If the Court were to find otherwise, then PACCAR moves in the alternative for judgment on the pleadings pursuant to Rule 12(c). Fed. R. Civ. P. 12(c).

new motor vehicle engines." 42 U.S.C. § 7543(a). The intention behind this section was to prevent states from creating "both different standards and separate administration[,]" which would cause the "difficulties faced by [vehicle and engine] manufacturers…[to] compound enormously." H.R. Rep. No. 90-728, at 1958 (1967). Congress "decided to provide for uniform administration of standards for motor vehicles" by vesting EPA with the exclusive authority to establish and enforce emission standards. *Id.*

Congress empowered EPA to establish and enforce conformity with applicable emission standards through its certification process, mandatory warranty requirements, detailed non-conforming vehicle reporting and remediation requirements, and extensive agency-directed enforcement remedies, such as recalls and civil penalties to ensure CAA compliance.

## A. THE CLEAN AIR ACT SUBJECTS HEAVY-DUTY ENGINES TO EXTENSIVE CERTIFICATION REQUIREMENTS TO ENSURE COMPLIANCE BEFORE ENTERING INTO COMMERCE.

The CAA requires vehicle and engine manufacturers to obtain a certificate of conformity before their vehicles or engines enter into commerce. 42 U.S.C. § 7522(a)(1) (prohibiting the "distribution in commerce, the sale, or the offering for sale, or the introduction, or delivery for introduction, into commerce" of uncertified vehicle and engines); *see also* 40 C.F.R. § 1068.101(a)(1) (prohibiting the sale of vehicles and engines without a valid certificate of conformity).[4] To obtain a certificate of conformity, heavy-duty vehicle and engine manufacturers must perform mandatory testing and submit extensive data to EPA with their certification applications demonstrating that their vehicles or engines will comply with applicable emission standards for the equipment's "useful life." 42 U.S.C. § 7521(a)(1) (emission standards "shall be applicable to such vehicles and engines for their useful life"); *see also* 40 C.F.R. §§ 86.001-23,

[4] In California, "(a) A person shall not offer for sale, introduce into commerce, import, deliver, purchase, rent, lease, acquire, or receive a new motor vehicle, new motor vehicle engine, or motor vehicle with a new motor vehicle engine for use, registration, or resale in this state unless the motor vehicle engine or motor vehicle has been certified." Cal. Health & Safety Code § 43151(a).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

86.001-24 (certificate of conformity applications test data requirements) & 40 C.F.R. pt. 1065 (heavy-duty highway engine test procedures).[5] As part of the certification application, engine manufacturers must "[d]escribe in detail all system components for controlling" emissions, including "all fuel-system components" the manufacturer "will install on any production or test engine," including the fuel injectors. 40 C.F.R. § 1036.205(b); 40 C.F.R. § 86.1803-01 (defining "fuel system" as "the combination of fuel tank(s), fuel pump, fuel lines, and carburetor *or fuel injection components*, and includes all fuel system vents and fuel evaporative emission control system components.") (emphasis added)). In addition, the certification application must include "[b]asic calibration information…for the major components of the fuel system…." 40 C.F.R. § 86.1844-01(e)(2). EPA's regulations further mandate that the manufacturer provide "[d]etailed calibration specifications for all emission-related components" upon written request by the EPA. *Id.* § 86.1844-01(g)(4). Thus, as part of the certification process, EPA must review and approve the entirety of the engine and emissions system, including fuel injectors, before issuing a certificate of conformity and authorizing the engine to lawfully enter into commerce.

After EPA has issued a certificate of conformity, if a manufacturer wishes to make any changes made to the configuration covered by the certificate of conformity, then the manufacturer must notify the agency of any change, "giving a full description of the change." 40 C.F.R. § 86.1842-01(b)(1) & *id.* § 86.079-33; *see also id.* § 86.1843-01(f) (requiring manufacturers to submit updated certification applications to incorporate any running changes). Referred to as a "running change," the manufacturer may implement the running change "if the manufacturer determines that following the change all affected vehicles will still meet applicable emission standards." *Id.* § 86.1842-01(b)(1). EPA "may require that additional emission testing be

[5] The CAA also authorizes EPA to conduct its own testing to ensure new vehicles or engines conform to emission standards. 42 U.S.C. § 7525(a)(1).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

performed to support the manufacturer's determination" that the running change will still meet applicable emission standards." *Id.* 86.1842-01(b)(2).[6]

**B. THE CLEAN AIR ACT REQUIRES MANDATORY WARRANTY COVERAGE FOR FUEL INJECTORS.**

To ensure ongoing compliance with emission standards, the Clean Air Act requires manufacturers to provide and honor two types of warranties. First, manufacturers must provide a *defect* warranty, guaranteeing that each covered engine/vehicle is "designed, built, and equipped so as to conform at the time of sale with applicable regulations." 42 U.S.C. § 7541(a)(1)(A). Second, manufacturers must provide a *performance* warranty that their engines are "free from defects in materials and workmanship which cause such vehicle or engine to fail to conform with applicable regulations" for the warranty period. *Id.* § 7541(a)(1)(B).[7] EPA has established a 5 year/100,000 mile warranty period, whichever occurs first.[8] *See* 40 C.F.R. § 86.004-2; 40 C.F.R. § 1036.120(b) tbl. 1, (c).[9]

Plaintiffs readily admit that fuel injectors are critical emission-related parts that fall within the scope of warranty coverage required by EPA and CARB. *See* TAC ¶ 115 (Dkt. # 108, at p. 24) ("Fuel injectors are an emissions-related part and are therefore covered by PACCAR's Emissions

---

[6] CARB has analogous regulatory requirements for implementing running changes. *See* Cal. Code Regs. tit. 13 § 1956.8(b) (incorporating federal running change regulation); *id.* § 1971.1(m).

[7] *See also* 40 C.F.R. § 1068.115 (stating that "Section 207(a) of the Clean Air Act (42 U.S.C. 7541(a)) requires certifying manufacturers to warrant to purchasers that their engines/equipment are designed, built, and equipped to conform at the time of sale to the applicable regulations for their full useful life, including a warranty that the engines/equipment are free from defects in materials and workmanship that would cause any engine/equipment to fail to conform to the applicable regulations during the specified warranty period.").

[8] For pre-2027 engines, these required warranties assure that heavy-duty vehicle engines conform to both exhaust emissions standards for criteria pollutants, such as NOx, HC, PM, and CO, as well as for greenhouse gases. 40 C.F.R. § 1036.1(a).

[9] CARB administers a parallel heavy-duty warranty program. For diesel heavy-duty vehicles over 14,000 pounds gross vehicle weight rating equipped with model year 2021 and prior engines, the applicable defects-warranty period is five years, 100,000 miles, or 3,000 hours of operation, whichever occurs first. Cal. Code Regs. tit. 13, § 2036(c)(4)(A). CARB's warranty requirements ensure that certified vehicles and engines are "[d]esigned, built, and equipped so as to conform" to all applicable emissions standards at the time of sale and are "[f]ree from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to that part as described in the vehicle [or] engine…manufacturer's application for certification." *Id.* § 2036(b)(1), (2).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

warranty."). EPA's heavy-duty engine "emission-related warranty covers all components listed in 40 C.F.R. part 1068, appendix A, and components from any other system [the manufacturer] develop[s] to control emissions." 40 C.F.R. § 1036.120(c). Appendix A to 40 C.F.R. Part 1068 lists the "fuel system"[10] as part of the emission-related components related to exhaust emissions that are within the CAA-required warranty scope. 40 C.F.R. pt. 1068, Appendix A.[11]

### C. THE CLEAN AIR ACT VESTS EPA AND CARB WITH EXCLUSIVE AUTHORITY TO ENFORCE COMPLIANCE WITH EMISSIONS STANDARDS.

Congress granted EPA and CARB the exclusive authority to administer and enforce compliance with CAA emissions standards. As part of this comprehensive regulatory regime, certifying manufacturers "must investigate in certain circumstances whether engines/equipment that have been introduced into U.S. commerce…have incorrect, improperly installed, or otherwise defective *emission-related components or systems* [e.g., fuel injectors]. This includes defects in design, materials, or workmanship." 40 C.F.R. § 1068.501(a) (emphasis added). An "emission-related warranty or any other warranty" claim requires the manufacturer to classify the component as having a "possible defect." *Id.* § 1068.501(b)(1). The manufacturer must conduct a defect investigation when the number of defective components exceed specific thresholds, and the manufacturer "must report [its] progress and conclusions[,]" including "mid-year and end-of-year reports to describe the methods [it is] using and the status of the investigation." *Id.* § 1068.501(h)(1). If the number of defective engines or components exceeds two percent of the

---

[10] "Fuel system" is defined as "the combination of fuel tank(s), fuel pump, fuel lines, and carburetor *or fuel injection components*." *See* 40 C.F.R. § 86.1803-01 (emphasis added).

[11] CARB's heavy-duty emissions-related warranty likewise covers "part[s]" that were described in the certification application. Cal. Code Regs. tit. 13, § 2036(b)(2). CARB defines an "emissions-related part" as "any automotive part, which affects any regulated emissions from a motor vehicle…. This includes, at a minimum, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990." Cal. Code Regs. tit. 13, § 1900(b)(3). The Emissions-Related Parts List includes mechanical, continuous, and electronic fuel injectors. *See Emissions-Related Parts List*, California Air Resources Board (June 1, 1990), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/afteroff/plist3.pdf.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

total number of engines or equipment in the family, the manufacturer must send a defect report to EPA. *Id.* § 1068.501(f).

If EPA determines that "a substantial number of properly maintained and used engines/equipment within a given class or category do not conform to the regulations," the manufacturer "*must* submit a plan to remedy the nonconformity of [its] engines/equipment." *Id.* § 1068.505(a) (emphasis added). EPA reviews the plan, notifies the manufacturer of EPA's "determination in writing[,]" and the manufacturer "*must* meet the requirements and follow the instructions in this subpart." *Id.* (emphasis added). The manufacturer "*must* remedy at [its] expense all engines/equipment that experienced the nonconformity during the useful life…." *Id.* (emphasis added). EPA "*may*" also "order [the manufacturer] to conduct a recall of [its] engines/equipment." *Id.* § 1068.501(a)(7) (referencing § 1068.505) (emphasis added).

CARB has analogous heavy-duty engine and vehicle defect reporting regulations. Manufacturers are required to "file emission warranty information reports and field information reports" during the warranty period. Cal. Code Regs. tit. 13, § 2141(b). Manufacturers must review warranty claim records "on a quarterly basis to determine and compile by cumulative total the number of claims made for emission-related components." *Id.* § 2144(a)(1). If there are "unscreened warranty claims for a specific emission-related component or repair" for "at least 1 percent or 25 (whichever is greater)," the manufacturer must file with CARB an emission warranty information report. *Id.* § 2144(a)(3). If "the failure of a specific emission-related component exceeds" 1 percent or 25 vehicles or engines, the manufacturer must file an emission information report that provides, among other things, a "description of the emission-related component that failed, the failure and the probable cause of failure." *Id.* § 2146(a), (c)(4). Based on the "warranty information reports, field information reports, enforcement testing results, or any other information," if CARB determines that a "substantial number of a class or category of vehicles, engines…produced by that manufacturer, although properly maintained and used, contain a failure



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

in an emission-related component" that do not meet applicable standards, the manufacturer will be notified of such determination and given at least 45 days to "submit a plan to remedy the nonconformity." *Id.* § 2123(a), (c).

CARB then must decide whether to require a recall. *Id.* § 2148(a). CARB may determine that a recall is unnecessary where the manufacturer demonstrates to CARB's satisfaction that "the failure…(1) is limited to an emission-related component on a substantial percentage of vehicles…and does not represent a pervasive defect in design, application, or execution which is likely to affect a substantial number of such emission-related components during the useful life of the vehicle, engine, or trailer, and (2) is likely to be corrected under the warranty program or other in-use maintenance procedure shortly after the inception of the problem." *Id.* § 2148(b); *see also id.* § 2143 (specifying recall threshold level of two percent or 50 "emission-related component[s]" "unless [CARB] determines from the emission information report that a recall is unnecessary").

Furthermore, EPA's and CARB's regulatory oversight and interest in fuel injectors is more than academic. Both agencies have focused significant CAA enforcement actions on issues involving fuel injectors and their software calibrations. *See, e.g.*, Second Partial Consent Decree, at 104, *In re Volkswagen "Clean Diesel" Mrtg., Sales Pracs., and Prod. Liab. Litig.*, No. 3:15-md-02672-CRB (N.D. Cal. Dec. 20, 2016, Dkt. # 2520-1) (requiring disclosure, modification, and/or removal of noncompliant calibrations, where a "common example" of a calibration "process is fuel injection (timing and quality) under different engine loads and ambient conditions"); Consent Decree, at 2, *United States v. Caterpillar*, No. 1:11-cv-1373(BAH) (D.D.C. Sept. 7, 2011, Dkt. # 4) (Caterpillar agreeing to pay $2.55 million to the United States and CARB after allegedly selling "engines [that] did not conform to the fuel injector and fuel map settings specified in Caterpillar's applications for certificates of conformity").



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## III. LEGAL STANDARD

To overcome a motion to dismiss, a complaint must "suggest that the claim has at least a plausible chance of success." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). While the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the nonmovant, if the Plaintiffs do not state a claim upon which relief could be granted, the Court must dismiss the complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.") (internal quotation marks and citation omitted).

In addition, the standard of review for Rule 12(c) motions for judgment on the pleadings is "functionally identical to a Rule 12(b)(6) motion." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal quotation marks and citation omitted). "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleading as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

## IV. ARGUMENT

### A. THE CLEAN AIR ACT PREEMPTS PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM.

Under the U.S. Constitution's Supremacy Clause, federal law "shall be the supreme law of the Land." U.S. Const. art. VI, cl. 2. Therefore, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Federal law may preempt a state law claim expressly and impliedly, and "[f]or each kind of preemption, 'the purpose of Congress is the ultimate touchstone.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

991 (N.D. Cal. 2018) (quoting *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 724 (9th Cir. 2016)). Because Congress intended for EPA and CARB to have the exclusive authority to enforce emission standards, the CAA both expressly and impliedly preempts Plaintiffs' attempt to enforce such standards through their breach of express warranty claim. Because Plaintiffs' sole claim is preempted by the CAA, Plaintiffs are not entitled to relief. Accordingly, this Court should dismiss their Third Amended Compliant.

**1. The Clean Air Act expressly preempts Plaintiffs' breach of warranty claim.**

The Clean Air Act's express statutory preemption applies to "any standard *relating to* the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a) (emphasis added). The Supreme Court has "'repeatedly recognized' that the phrase 'relate to' in a preemption clause 'express[es] a broad pre-emptive purpose.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)) (alteration in original). In the context of the CAA, the Supreme Court has also interpreted "standard" broadly to refer to a "command, accompanied by sanctions" and clarified that the "criteria referred to in § 209(a) relate to the emission characteristics of a vehicle or engine. To meet them the vehicle or engine must not emit more than a certain amount of a given pollutant, *must be equipped with a certain type of pollutant-control device*, or must have *some other design feature related to the control of emission*." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253, 255 (2004) (emphasis added). The Clean Air Act's defect and performance warranty requirements are "mandated by federal law as part of the statutory and regulatory scheme to ensure compliance with motor vehicle emissions standards." *In re Caterpillar Inc. C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-cv-3722-JBS-JS, 2015 WL 4591236, at *13 (D.N.J. July 29, 2015).[12]

[12] If "emissions-related parts or components…cause the vehicle or engine to not conform to EPA regulations[,]" the manufacturer's statutory obligation to address the issue pursuant to its emissions-related warranty is triggered. *In re Caterpillar*, 2015 WL 4591236, at *13. If a vehicle or engine manufacturer violates the Clean Air Act warranty


CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs' breach of warranty claim is preempted because the "fuel injectors are an emissions-related part and are therefore covered by PACCAR's Emissions warranty[,]" which is an emission-related warranty that the Clean Air Act requires PACCAR to provide.[13] TAC ¶ 115 (Dkt. # 108, at p. 24). Because fuel injectors are a "critical emissions-related component," they impact an engine's ability to conform with applicable emissions regulations.[14] The Clean Air Act, therefore, requires PACCAR to provide warranty coverage for fuel injector repairs or defects in materials or workmanship for five years or 100,000 miles, whichever comes first. *See* 42 U.S.C. § 7541(a); 40 C.F.R. § 7541(a); 40 C.F.R. § 86.004-2 (for criteria pollutants); 40 C.F.R. § 1036.120 (for greenhouse gas emissions); *see also* Cal. Code Regs. tit. 13, § 2036(b).

PACCAR provides this statutorily mandated coverage through its Limited Warranty Agreement. *See* Limited Warranty Agreement, Ex. A to TAC (Dkt. 108, at pp. 82-83) ("PACCAR warrants to the original retail purchaser that the PACCAR MX engine…identified below will be free from defects in materials and factory workmanship ('Warrantable Failures') and agrees to repair Warrantable Failures appearing under normal commercial use and service … within the time or mileage or hour limitations set forth in the attached Warranty Schedule."). The Limited Warranty Agreement also incorporates the Emissions Warranty found in PACCAR's MX Operator's Manual, which states that "'PACCAR warrants to the first purchaser…that the engine is designed, built and equipped so as to conform at the time of sale by PACCAR with all U.S.

---

requirements, the statute "authorizes the federal government to pursue [those] violations in federal court or administratively" *Id.* at *15 (citing 42 U.S.C. §§ 7522(a)(4)(D), 7523, and 7524).

[13] *See* 42 U.S.C. § 7541(a)(1) (requiring the manufacturer to warrant to the ultimate purchaser that the engine "designed, built, and equipped" to conform with EPA's regulations and "free from defects in materials and workmanship which cause such vehicle or engine to fail to conform with applicable regulations….").

[14] *See* 40 C.F.R. § 1068.30 (defining a "critical emission-related component" as "a part or system whose primary purpose is to reduce emissions or whose failure would commonly increase emissions without significantly degrading engine/equipment performance"); *see also* 40 C.F.R. § 86.088-2 (defining "critical emission-related components" as those "designed primarily for emission control, or whose failure may result in a significant increase in emissions accompanied by no significant impairment…in performance, driveability, and/or fuel economy…."); 40 C.F.R. § 1036.125(a) (EPA's heavy-duty engine maintenance regulation stating that "[c]ritical emission-related maintenance includes any adjustment, cleaning, repair, or replacement of components listed in paragraph (a)(2) of this section[,]" which includes "fuel injectors").



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Federal emission regulations applicable at the time of manufacture … and that the engine 'is free from defects in material or factory workmanship which would cause it not to meet these regulations within the longer of the following periods: (A) Five years or 100,000 miles…whichever occurs first…or (B) the basic engine warranty' (the 'performance warranty')." TAC ¶ 114 (Dkt. # 108, at pp. 23–24).

Federal courts have dismissed breach of express warranty claims, holding that the Clean Air Act expressly preempts such claims when they involve emission-related parts and components. In *In re Caterpillar*, the court considered a breach of express warranty claim similar to Plaintiffs' claim here. The "Federal Emissions Control Warranty" at issue there covered "'emission related parts and components'" including the "'Fuel Injection System.'" *In re Caterpillar*, 2015 WL 4591236, at *4 (quoting Federal Emissions Control Warranty). Caterpillar argued that the CAA preempted Plaintiffs' claims, and Plaintiffs asserted their breach of express warranty claim was not within the scope of the CAA's preemption provision because they did not seek a change in Caterpillar's emission system design or emissions levels. *Id.* at *6. The court explained that Caterpillar's preemption argument required it "to determine the nature of Plaintiffs' claims and the relief sought and whether such claims are expressly or impliedly preempted by the EPA's emissions regulatory scheme." *Id.* at *1.

The court held that that the CAA preempted the plaintiffs' breach of express warranty claim because the CAA mandated Caterpillar's Federal Emissions Control Warranty, which covered "'defects in material and workmanship'" and expressly covered "'emission related parts and components,'" including the fuel injection system. *Id.* at *4 (quoting the Federal Emissions Control Warranty). Unlike the other warranties at issue in that case, the court found that the Federal Emissions Control Warranty "was not voluntarily undertaken" but rather "mandated by federal law as part of the statutory and regulatory scheme to ensure compliance with motor vehicle emissions standards." *Id.* at *13 (citing 42 U.S.C. § 7541(a)(1)). Therefore, the court concluded



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"Plaintiffs' claims escape express preemption *with the exception* of their breach of warranty claim based on the statutorily-mandated" Federal Emissions Control Warranty. *Id.* at *9 (emphasis added).

The court also underscored that the CAA "authorizes the federal government to pursue violations of warranty provisions in federal court or administratively" and that the emissions warranty was therefore "part of the enforcement scheme under the CAA." *Id.* at *13. The court explained:

> to trigger the manufacturer's obligations under the [Federal Emissions Control Warranty], the emissions-related parts or components must cause the vehicle or engine to not conform to EPA regulations. It is therefore untenable for Plaintiffs to argue that there can be no preemption because their claims do not relate to the ability of the Engines to comply with EPA standards or depend upon a showing of non-conformity. In light of the Supreme Court's interpretation of the term "standard" in *EMA*, permitting Plaintiffs' claim for a breach of the [Federal Emissions Control Warranty] would be "an attempt to enforce [a] standard relating to the control of emissions from new motor vehicles or…engines."

*Id.* (quoting 42 U.S.C. § 7543(a)) and citing *Engine Mfrs. Ass'n*, 541 U.S. at 253-54).

In addition, finding *In re Caterpillar* "persuasive authority," the *In re Chrysler-Dodge-Jeep EcoDiesel* district court also held that the CAA preempted plaintiffs' breach of express warranty claim, which involved two federally-required emission control warranties. *In re Chrysler*, 295 F. Supp. 3d at 1024 ("For breach of express warranty, the warranties at issue are two emission control warranties, which, as expressly alleged in the [complaint], federal law *requires* manufacturers to provide: (1) a 'Performance Warranty' and (2) a 'Defect Warranty.'") (emphasis in original). The court explained that in *Caterpillar*, "given the mandatory nature of the express warranties and the enforcement scheme of the CAA in respect thereto, state claims for breach of those express warranties completely overlapped with the CAA." *Id.* at 1025. And the court concluded that because "in the instant case, the warranties at issue *are* required by federal law [. . .] a finding of violation of a CAA emissions standard necessarily results in a breach of warranty without any intervening independent and volitional conduct (*e.g.*, deceit and misrepresentation) by



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Defendants." *Id.* (emphasis in original). The court explained that because Plaintiffs' warranty claims were "entirely predicated on compliance with federal emissions standards (EPA or CARB)[,]" their claims "amount[] to direct enforcement of federal emissions standards preempted by the CAA." *Id.* at 1026.

The same is true here. PACCAR's Limited Warranty Agreement "is mandated by federal law as part of the statutory and regulatory scheme to ensure compliance with motor vehicle emissions standards." *In re Caterpillar*, 2015 WL 4591236, at *13. PACCAR's Limited Warranty Agreement covers "'defects in materials and factory workmanship'" (TAC ¶ 113 (quoting Limited Warranty Agreement) (Dkt. # 108, at p. 23)) —which is precisely what the Clean Air Act requires—and "there is no mistaking" that PACCAR's warranty is "anything other than what it purports to be-a description of the federally mandated emissions control warranties." *In re Caterpillar*, 2015 WL 4591236, at *4 n.4. Because Plaintiffs claim stems from PACCAR's Limited Warranty Agreement, which is "statutorily mandated," *In re Chrysler*, 295 F. Supp. 3d at 1024, Plaintiffs' breach of warranty claim would, "[i]n light of the Supreme Court's interpretation of the term 'standard' in *EMA*," be an impermissible attempt to "'enforce [a] standard relating to the control of emissions from new motor vehicles or [...] engines.'" *In re Caterpillar*, 2015 WL 4591236, at *11, *13 (quoting 42 U.S.C. § 7543(a)).

Plaintiffs' Third Amended Complaint transparently seeks to enforce emission standards despite the Clean Air Act's proscription. First, Plaintiffs allege "PACCAR breached the Limited Warranty Agreement because, prior to June 2024, PACCAR could not make all adjustments, repairs or replacements *necessary to ensure that trucks equipped with the EPA 2021 MX-13 engine complied with applicable EPA emissions standards*…." TAC ¶ 471 (Dkt. # 108, at p. 76) (emphasis added). Plaintiffs also explicitly explain the nexus between the fuel injectors and emissions control in describing the three phases of the fuel injector system. *Id.* ¶ 66. Plaintiffs also allege that the fuel injector problem "threatened to derail PACCAR's efforts to certify the engines



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

for production with [EPA] and [CARB]." *Id.* ¶ 69. Plaintiffs concede, "[t]he Fuel System Defect triggered PACCAR's Emissions warranty because it caused or had the potential to cause insufficient regeneration and high soot loading of the diesel particular filter due to incomplete or uneven fuel burning. This meant the EPA 2021 MX-13 engine *had the potential to produce excess emissions, which would cause it to not conform to EPA regulations*." *Id.* ¶ 116 (emphasis added). And they assert that "[t]he Limited Warranty Agreement failed of its essential purpose because for at least three years, from the start of production of the EPA 2021 MX-13 engine in May 2021 until the introduction of the Pack 2 design as a replacement injector for model year 2021 through 2023 trucks in June 2024, there was no way to make the EPA 2021 MX-13 engine free from defects. *There was no way to ensure the engine would comply with EPA standards for the remainder of its useful life*." *Id.* ¶ 146 (emphasis added). Thus, because Plaintiffs' claim is a manifest "'attempt to enforce [a] standard relating to the control of emissions'" the CAA preempts it. *In re Caterpillar*, 2015 WL 4591236, at *13 (quoting 42 U.S.C. § 7543(a)); *see also In re Chrysler*, 295 F. Supp. 3d at 1026 (same).

The *In re Caterpillar* court further made clear that a claim seeking "a specific design change related to emissions compliance" would be "expressly preempted by the CAA." *See In re Caterpillar*, 2015 WL 4591236, at *12 n.16. Here, Plaintiffs also take issue with the design of PACCAR's MX-13 engine, the approval of which is a decision that the CAA expressly reserves for EPA. Plaintiffs' Third Amended Complaint is replete with allegations that the alleged fuel injector issue was a design defect. *See, e.g.*, TAC ¶ 86 (Dkt. # 108, at p. 18) ("PACCAR continued producing engines with *injectors that relied on the original, defective injector design*") (emphasis added); *id.* ¶ 93 ("PACCAR told the EPA and CARB that the *three-hole armature design* would be a permanent fix") (emphasis added); *id.* ¶ 98 ("PACCAR knew the *three-hole armature design did not and would not meet PACCAR's expectations* and that *further modifications* were required to make these injectors work properly.") (emphasis added); *id.* ¶ 471 ("It remains unclear *whether*



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*the Pack 2 design is a permanent fix* for the Fuel System Defect.") (emphasis added). But EPA, exercising its authority under the CAA, approved PACCAR's fuel injector design, which was a predicate for EPA issuing PACCAR's certificates of conformity. Plaintiffs' request for relief, which goes well beyond the agencies' order for an extended warranty, is therefore impermissible because the CAA exclusively reserves for EPA the authority to approve the designed fuel injectors and order remedies to address nonconformities.

**2. The Clean Air Act impliedly preempts Plaintiffs' breach of warranty claim.**

The Clean Air Act also impliedly preempts Plaintiffs' claim, through both field and conflict preemption. "Field preemption occurs 'where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *In re Ford*, 65 F.4th at 859 (citation omitted). Conflict preemption occurs "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* at 860 (internal quotation marks and citation omitted). Here, the CAA impliedly preempts Plaintiffs' claim both because Congress directed EPA to occupy the field of emission standard enforcement and because Plaintiffs' request for relief squarely contradicts how EPA and CARB exercised their authority to address the fuel injector issue.

**a. The CAA "occupies the field" of emission standards enforcement, thus preempting Plaintiffs' claim.**

A state law claim is implicitly preempted "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively[.]" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Congress created a comprehensive federal emissions regulatory regime, including for "critical emission-related components" such as fuel injectors, that mandated emission control warranty coverage. Indeed, manufacturers may not even sell vehicles or engines without first obtaining from EPA certificates of conformity, applications for which require descriptions of



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

emission-related components. An emission-critical component warranty must also be approved by EPA. *See generally,* Section II *supra*.

The Clean Air Act's mandatory emission warranty requirements "occupy the field of emissions standards enforcement" and therefore preempt state law breach of warranty claims for federally mandated emission warranties. *In re Caterpillar*, 2015 WL 4591236, at *15. In *In re Caterpillar*, the court found the alleged breach of the Federal Emissions Control Warranty "impliedly preempted by the federal statutory and regulatory regime related to motor vehicle emissions." *Id.* The court reasoned that "Congressional intent to occupy a particular field can be no clearer than when mandating a particular course of action." *Id.* Because the CAA through the Federal Emissions Control Warranty "expressly requires manufacturers to warrant […] compliance at the time of sale and for a period after sale that that engine is free from defects in material and workmanship which render[s] it noncompliant with applicable emissions regulations" and the CAA prohibits a manufacturer from failing to comply with the warranty requirements and authorizes judicial and administrative enforcement by EPA and CARB, the warranty "is essentially a mechanism to enforce emissions standards and the structure and breadth of the CAA and associated regulations clearly manifests Congressional intent to occupy the field of emissions standards enforcement." *Id.*

Plaintiffs' claim fails for the same reason: Congress intended the CAA to exclusively occupy the field of heavy-duty vehicle emission standards enforcement, including by imposing mandatory warranty requirements, so Plaintiffs' fuel injector claim covered by PACCAR's Limited Warranty Agreement is therefore impliedly preempted. The CAA's occupation of the field is further evidenced by EPA's comprehensive regulatory scheme in providing oversight of any changes made to the engine or vehicle certification. Plaintiffs detail the many efforts PACCAR took to address the fuel injector issue, including with the implementation of the three-hole armature change. TAC ¶¶ 93, 107 (Dkt. # 108, at pp. 20, 22-23). These efforts involved running changes



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

subject to the agencies' oversight and approval. *See* 40 C.F.R. § 86.1842-01(b). Had the agencies found such changes ineffective or causing non-compliance with emission standards, the agencies could have "require[d]…additional emission testing" or "rescind[ed] the addition or change immediately[,]" but, as Plaintiffs allege, they did not. *Id.*

Plaintiffs are improperly attempting to assume the agencies' role in enforcing emissions standards through their breach of warranty claim. If PACCAR had failed to provide the CAA-mandated Limited Warranty Agreement coverage, EPA and CARB would not have certified PACCAR's 2021 MX-13 engine for sale in the United States. *See* 42 U.S.C. § 7541(a)(1)(A); 40 C.F.R. §§ 86.004-2, 1068.115. And if PACCAR failed to honor the Limited Warranty Agreement, PACCAR would have been subject to EPA and CARB enforcement, including potential mandatory field actions and recalls. As Plaintiffs allege, EPA and CARB have been involved throughout the entire process. This comprehensive regulatory regime demonstrates that Congress intended the CAA to occupy the emissions field, rendering Plaintiffs' breach of warranty claim impliedly preempted.

**b. Plaintiffs' breach of warranty claim is preempted because the requested relief conflicts with EPA's and CARB's chosen remedy.**

"Implied conflict pre-emption occurs when it is 'impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *In re Caterpillar*, 2015 WL 4591236, at *14 (quoting *Freightliner*, 514 U.S. at 287). Here, Plaintiffs seek "all permissible damages," which may include lost profits or other damages due to the alleged "financial ruin." TAC ¶ 9, Prayer for Relief (Dkt. # 108, at pp. 4, 78). Not only does this go beyond the express Limited Warranty Agreement terms to which Plaintiffs agreed, it also exceeds what



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the CAA authorizes and would be an obstacle to Congressional objectives that exclusively authorize environmental protection agencies to ensure and enforce emissions compliance.

Plaintiffs acknowledge EPA's and CARB's authority to address the fuel injector issue. For example, Plaintiffs allege that because warranty claims concerning the fuel injectors exceeded the regulatory thresholds, PACCAR proposed an extension of the warranty as a solution, *id.* ¶¶ 137, 138, and "[t]he EPA and CARB went along with this approach, allowing PACCAR to avoid a full recall." *Id.* ¶ 139. And "PACCAR extended the warranty to 10 years or 435,000 miles on fuel injectors in the EPA 2021 MX-13 engine for model year 2021 through 2023." *Id.* ¶ 140. As Plaintiffs allege, by accepting PACCAR's proposal to extend the warranty instead of pursuing other authorized remedial options, EPA exercised its authority and required PACCAR to offer extended warranty coverage to address the emission-related fuel injector issue. *Id.* ¶ 128 ("EPA…decides whether to accept the manufacturer's proposal or order alternative remedial action); *see* 40 C.F.R. § 1068.505(a) (requiring manufacturer to "submit a plan to remedy the nonconformity" to be accepted or rejected by the agency).

Plaintiffs seek to substitute their judgment for that of the agencies because they are unsatisfied with the agencies' decision to extend the warranty coverage, claiming that instead "these trucks should have been recalled." TAC ¶ 125 (Dkt. # 108, at p. 26). But, in compliance with the prescriptive regulatory process, *see* Section II.C, *supra*, EPA and CARB exercised their regulatory authority, applied their expertise, and approved PACCAR's proposal to provide an extended warranty, rendering further remedial action, including a potential recall, unnecessary and in conflict with the agencies' selected remedy. *See* 40 C.F.R. § 1068.505(a). This Court should reject Plaintiffs' attempt to second-guess EPA's decision to order an extended warranty and find that the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room to supplement it.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## V. CONCLUSION

Accepted as true, Plaintiffs' allegations do not suggest that the breach of express warranty claim has a plausible chance of success since the CAA preempts it, both expressly and impliedly. Therefore, PACCAR respectfully requests that this Court dismiss Plaintiffs' claim.

DATED: March 10, 2026.

*I certify that this memorandum contains 6,709 words, in compliance with the Local Civil Rules*

By: */s/ Joshua H. Van Eaton*
Joshua H. Van Eaton, WSBA No. 39871
Daniel B Schulson (admitted *Pro Hac Vice*)
BEVERIDGE & DIAMOND P.C.
1900 N St. NW, Ste. 100,
Washington, DC 20036
Tel: (202) 789-6033
jvaneaton@bdlaw.com
dschulson@bdlaw.com

Anthony G. Papetti (admitted *Pro Hac Vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 702-5442
apapetti@bdlaw.com

Pamela S. Tonglao, WSBA No. 29476
Jesse Blaisdell, WSBA No. 44044
777 106 Avenue NE
Bellevue, Washington 98004-5027
Tel: (425) 468-7356
Fax: (425) 468-8228
pamela.tonglao@paccar.com
jesse.blaisdell@paccar.com

Anthony M. Pisciotti (admitted *Pro Hac Vice*)
Danny C. Lallis (admitted *Pro Hac Vice*)
PISCIOTTI LALLIS ERDREICH
30A Vreeland Road, Suite 300

Florham Park, New Jersey 07932
Telephone: (973) 245-8100
apisciotti@pisciotti.com
dlallis@pisciotti.com

By: */s/ Brittany A. Madderra*
William R. Squires III, WSBA No. 4976
Brittany A. Madderra, WSBA No. 48514
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel: (206) 625-8600
Fax: (206) 625-0900
rsquires@corrcronin.com
bmadderra@corrcronin.com

*Attorneys for Defendant PACCAR Inc.*